# EXHIBIT A

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

| For Office of Judicial Records Use Only (Docket Number) |
|---|

PLAINTIFF'S NAME
## Roger Traversa

DEFENDANT'S NAME
## Koninklijke Philips N.V.

*Filed and Attested by the
Office of Judicial Records
29 DEC 2021 12:09 pm
S. RICE*

PLAINTIFF'S ADDRESS
2110 W Master St. Philadelphia PA 19121

DEFENDANT'S ADDRESS
Amstelplein 2 Amsterdam, 1096 BC Netherlands

PLAINTIFF'S NAME

DEFENDANT'S NAME
## Philips North America LLC

PLAINTIFF'S ADDRESS

DEFENDANT'S ADDRESS
222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141

PLAINTIFF'S NAME

DEFENDANT'S NAME
## Philips RS North America LLC

PLAINTIFF'S ADDRESS

DEFENDANT'S ADDRESS
6501 Living Place, Pittsburgh, Pennsylvania 15206.

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 5 | ☑ Complaint   ☐ Petition Action   ☐ Notice of Appeal |
| | | ☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Minor Court Appeal | ☐ Settlement |
| ☑ More than $50,000.00 | ☑ Jury | ☐ Savings Action | ☐ Statutory Appeals | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Commerce (Completion of Addendum Required) | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)
## Products Liability 2P

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

IS CASE SUBJECT TO COORDINATION ORDER?

| Yes | No |
|---|---|
| ☐ | ☐ |
| ☐ | ☐ |
| ☐ | ☐ |

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY
## Charles Thomas, Jr.

ADDRESS (SEE INSTRUCTIONS)
280 N. Providence Rd.
Suite 4
Media PA 19063

| PHONE NUMBER | FAX NUMBER |
|---|---|
| 610-504-2318 | |

SUPREME COURT IDENTIFICATION NO.
89781

E-MAIL ADDRESS
charles@cthomasesq.com

SIGNATURE

DATE
12-27-2021

Case ID: 211201983

# Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

**A.** **Parties**

  *i.* *Plaintiffs/Defendants*
  Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

  *ii.* *Parties' Addresses*
  Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

  *iii.* *Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

**B.** **Commencement Type:** Indicate type of document filed to commence the action.

**C.** **Amount in Controversy:** Check the appropriate box.

**D.** **Court Program:** Check the appropriate box.

**E.** **Case Types:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.

**Proceedings Commenced by Appeal**

Minor Court
5M  Money Judgment
5L  Landlord and Tenant
5D  Denial Open Default Judgment
5E  Code Enforcement
     Other:
Local Agency
5B  Motor Vehicle Suspension - Breathalizer
5V  Motor Vehicle Licenses, Inspections, Insurance
5C  Civil Service
5K  Philadelphia Parking Authority
5Q  Liquor Control Board
5R  Board of Revision of Taxes
5X  Tax Assessment Boards
5Z  Zoning Board
52  Board of View
51  Other:
Other:

**Proceedings Commenced by Petition**

8P  Appointment of Arbitrators
8C  Name Change - Adult
8L  Compel Medical Examination
8D  Eminent Domain
8E  Election Matters
8F  Forfeiture
8S  Leave to Issue Subpoena
8M  Mental Health Proceedings
8G  Civil Tax Case - Petition
     Other:

*Actions Commenced by Writ of Summons or Complaint*

Contract
1C  Contract
1T  Construction
1O  Other:
Tort
2B  Assault and Battery
2L  Libel and Slander
4F  Fraud
1J  Bad Faith
2E  Wrongful Use of Civil Process
     Other:
Negligence
2V  Motor Vehicle Accident
2H  Other Traffic Accident
1F  No Fault Benefits
4M  Motor Vehicle Property Damage
2F  Personal Injury - FELA
2O  Other Personal Injury
2S  Premises Liability - Slip & Fall
2P  Product Liability
2T  Toxic Tort
     *T1  Asbestos*
     *TZ  DES*
     *T2  Implant*
3E  Toxic Waste
     Other:

Professional Malpractice
2D  Dental
4L  Legal
2M  Medical
4Y  Other:
1G Subrogation
Equity
E1  No Real Estate
E2  Real Estate
1D  Declaratory Judgment
M1  Mandamus
Real Property
3R  Rent, Lease, Ejectment
Q1  Quiet Title
3D  Mortgage Foreclosure - Residential Owner Occupied
3F  Mortgage Foreclosure - Not Residential Not Owner Occupied
1L  Mechanics Lien
P1  Partition
     Prevent Waste
1V  Replevin
1H Civil Tax Case - Complaint
     Other:

**F.** **Commerce Program**
Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

**G.** **Statutory Basis for Cause of Action**
If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H.** **Related Pending Cases**
All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I.** **Plaintiff's Attorney**
The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

**The current version of the Civil Cover Sheet may be downloaded from the FJD's website**
**http://courts.phila.gov**

Case ID: 211201983

Court of Common Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet
*(Supplemental Parties)*

| | For Office of Judicial Records Use Only (Docket Number) |
|---|---|

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | AdaptHealth |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 220 W Germantown Pike, Ste 250 PLYMOUTH MEETING PA 19 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | CMMC, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 15 W WOOD ST NORRISTOWN PA 19401 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

01-102

Case ID: 211201983

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## COURT OF COMMON PLEAS OF PHILADELPHIA

ROGER TRAVERSA

v.

KONINKLIJKE PHILIPS N.V.;
PHILIPS NORTH AMERICA, LLC;
PHILIPS RS NORTH AMERICA, LLC;
ADAPTHEALTH CORP.;
and CMMC, INC.

### NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio.  Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania  19107<br>(215) 238-6333<br>TTY (215) 451-6197** | **Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania  19107<br>(215) 238-6333<br>TTY (215) 451-6197** |

32/4: 6

Case ID: 211201983

**CHARLES THOMAS, JR.**
ATTORNEY-AT-LAW
Atty. I.D. No. 89781
280 N. Providence Road Suite 4
Media, PA  19063
(610) 504-2318
Attorney for Plaintiff

| | | |
|---|---|---|
| ROGER TRAVERA | : | First Judicial District |
| Plaintiff | : | Court of Common Pleas of Philadelphia |
| v. | : | Civil |
| | : | |
| KONINKLIJKE PHILIPS N.V.; | : | _____ 2021 Term |
| PHILIPS NORTH AMERICA, LLC; | : | No. _____ |
| PHILIPS RS NORTH AMERICA, | | |
| LLC; ADAPTHEALTH CORP.; and | | COMPLAINT |
| CMMC, INC. | | JURY TRIAL DEMANDED |
| Defendants | | NON-ARBITRATION |

## <u>COMPLAINT</u>

NOW COMES ROGER TRAVERSA, Plaintiff, by and through Counsel, and who hereby jointly submit the following Complaint, and in support thereof, hereby aver as follows:

1.      Roger Traversa, ("Mr. Traversa") for years suffered through health-threatening and debilitating sleep apnea.

2.      Sleep apnea is a condition that causes a person to stop breathing for various lengths of time while they sleep; as a result, sleep apnea patients wake repeatedly during the night.

3.      The loss of sleep during the night can have numerous deleterious effects, and is associated with an increase in heart disease, liver disease, hypertension, and metabolic syndrome.

Case ID: 211201983

4.      Sleep apnea can also have serious social and professional consequences, as the lack of sleep during the night often causes excessive daytime sleeping, unintentional nodding off at work, moodiness, and irritability.

5.      To treat sleep apnea, sleep medicine specialists prescribe a Continuous Positive Airway Pressure ("CPAP") machine.

6.      CPAP works by maintaining a constant flow of filtered, pressurized air through a mask fitted over the mouth and/or nose; the pressurized air works to keeps the airway open.

7.      Mr. Traversa relied on a CPAP machine designed, manufactured, and/or sold by the Defendants in order to sleep through the night.

8.      Unfortunately, this machine almost killed him.

## THE PARTIES

9.      At all times relevant hereto, Plaintiff Roger Traversa was (and is) a citizen of the Commonwealth of Pennsylvania, currently residing at 2110 W. Master Street, Unit B, Philadelphia, PA  19121.

10.     Defendant Koninklijke Philips N.V. ("Koninklijke") is a Dutch multinational company headquartered in Amsterdam, Netherlands, and is the parent company of Philips North America LLC and Philips RS North America LLC.

11.     Defendant Philips North America LLC ("PNA") is a Delaware company with its principal place of business in Cambridge, Massachusetts.

12.     Defendant Philips RS North America LLC (formerly Respironics, Inc.) (PRS) is a Delaware company with its headquarters and principal place of business in Murrysville, Pennsylvania.

Case ID: 211201983

13.   Hereinafter, Koninklijke, PNA, and PRS shall be collectively referenced as "Philips" unless the facts require specifying the Philips entity involved.

14.   Defendant AdaptHealth, Inc. ("AdaptHealth") is a Delaware corporation with its principal place of business in Plymouth Meeting, Pennsylvania and is the parent company of CMMC, Inc.

15.   Defendant CMMC, Inc. ("CMMC") is a Pennsylvania, non-profit, non-stock company with its principal place of business in Phoenixville, Pennsylvania. CMMC transacts business under the fictitious name of Montgomery Medical Equipment Company.

16.   Hereinafter, AdaptHealth and CMMC shall be collectively referenced by its fictitious name "Montgomery" unless the facts require specifying the Montgomery entity involved.

17.   At all relevant times, each Philips Defendant acted in all respects as the agent and alter ego of each other.

18.   At all relevant times, each Montgomery Defendant acted in all respects as the agent and alter ego of each other.

**JURISDICTION AND VENUE**

19.   Subject matter jurisdiction is proper in this Court pursuant to 42Pa.C.S.A. §931(a), which grants "unlimited original jurisdiction" over "all actions and proceedings..."

20.   Personal jurisdiction is established over Defendants PRS and Montgomery by virtue of the presence in the Commonwealth of Pennsylvania.

Case ID: 211201983

21.     Personal jurisdiction over Defendants Koninklijke and PNA is established

pursuant to 42 Pa.C.S.A. §5322(a)(1), because of their regularly conducted business

in the Commonwealth of Pennsylvania.

22.     Venue is proper in this Court pursuant to Rule 1006(a)(1), because the

causes of action arose in Philadelphia County.

## FACTUAL ALLEGATIONS

### CPAP AND BIPAP MACHINES AND VENTILATORS

23. CPAP and BiPAP ("BiLevel Positive Airway Pressure") machines and ventilators
   are all used to treat serious respiratory conditions by helping patients to breathe.

24. CPAP and BiPAP machines are used primarily as treatment for sleep apnea.

25. Sleep apnea (sometimes called obstructive sleep apnea) is a disorder in which
   breathing is disturbed temporarily during sleep. Breathing may stop or become
   very shallow. These periods are called "apneas" or "apnea events" and they may
   be associated with fatigue, daytime sleepiness, depression, interrupted sleep, or
   snoring, among other symptoms.  Serious cases can lead to hypertension, heart
   attack, or stroke, among other medical ailments. It is estimated that over 25
   million Americans suffer from sleep apnea.

26. CPAP therapy is the most common treatment for sleep apnea. In CPAP therapy, a
   machine delivers a flow of air through a mask over the nose and/or mouth, which
   increases air pressure in the throat so that the airway does not collapse during
   inhalation. CPAP therapy assists breathing during sleep and can successfully treat
   sleep apnea. According to the Mayo Clinic, "CPAP is the most consistently
   successful and most commonly used method of treating obstructive sleep apnea."

Case ID: 211201983

27. CPAP machines consist of a main unit which connects to a facemask via an air hose. A patient will typically place the main unit on a nightstand and then wear the mask in bed while sleeping.

28. The following images show the general components and typical use of these machines:

29.





30. Sleep apnea patients typically use these machines every night when they sleep. Symptoms may return quickly, often immediately, without continued use.

Case ID: 211201983

31. This suit involves the use of the Philips DreamStation machine designed and manufactured by Defendant Philips, and sold by Defendant Montgomery to the Plaintiff.

32. CPAP and BiPAP machines and ventilators are big business. The global sleep apnea devices market size was valued at $3.7 billion in 2020 and is expected to expand considerably in the coming years.

33. Philips is a major manufacturer of CPAP machines, BiPAP machines, and ventilators. Philips has sold millions of CPAP and BiPAP machines and ventilators in the United States.

34. Philips's primary line of CPAP/BiPAP machine products has been the DreamStation line. The original DreamStation launched in October 2015. Philips subsequently launched a more compact version which it advertises as ideal for travel called the DreamStation Go.

35. The DreamStation products have been among the bestselling sleep apnea devices on the market.

36. Philips designed, manufactured, and/or marketed DreamStation products through its Western Pennsylvania based subsidiary, Respironics (now Philips RS North America LLC), which Philips acquired in 2008.

37. Sales to the ultimate consumer proceeded through medical supply companies; Plaintiff's physician prescribed and ordered the DreamStation and Plaintiff received the DreamStation which was purchased from CMMC on or about November 23, 2015.

Case ID: 211201983

38. Many of Philips's CPAP and BiPAP machines and ventilators contain PE-PUR foam in order to reduce sound made by the machines. As designed, air passes through this foam before it is pumped into the patient's airway. Some of the sound generated by the machine is thereby absorbed by the foam.

39. Sound reduction can be an attractive feature since patients operate these devices while they (and their partners) are sleeping. In fact, the relative quiet of DreamStation products factors prominently into Philips's marketing.  Philips put out information that it extensively studied and measured the amount of sound produced by DreamStation products. For example, Philips put out the following infographic  indicating  DreamStation  products are barely louder than a whisper:

40. Infographic:



41. On April 13, 2021, Philips announced that it was launching a next-generation model of the DreamStation, called the DreamStation 2.

Case ID: 211201983

**RECALL AND SERIOUS HEALTH RISKS**

42. On April 26, 2021, less than two weeks after it announced the launch of the
    second-generation, Philips announced the recall of first-generation DreamStation
    products due to concerns about serious health risks.

43. Philips has determined from user reports and testing that there are possible risks
    to users related to the sound abatement foam used in certain of Philips' sleep and
    respiratory care devices currently in use. The risks include that the foam may
    degrade and/or off-gas under certain circumstances, including being influenced by
    factors such as use of unapproved cleaning methods, such as ozone, and certain
    environmental conditions involving high humidity and temperature. The majority
    of the affected devices are in the first-generation DreamStation product family.

44. On June 14, 2021, Philips issued a further statement about the possible health
    risks stemming from deterioration of the PE-PUR foam. See
    https://www.usa.philips.com/a-
    w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-
    notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-
    foam-component-in-certain-sleep-and-respiratory-care-devices.html, a printout of
    which is attached as Exhibit __.

45. To date, Philips has produced millions of Bi-Level PAP, CPAP and mechanical
    ventilator devices using the PE-PUR sound abatement foam.  Despite a low
    complaint rate (0.03% in 2020), Philips determined based on testing that there are
    possible risks to users related to this type of foam. The risks include that the PE-
    PUR foam may degrade into particles which may enter the device's air pathway

Case ID: 211201983

and be ingested or inhaled by the user, and the foam may off-gas certain chemicals. The foam degradation may be exacerbated by use of unapproved cleaning methods, such as ozone, and high heat and high humidity environments may also contribute to foam degradation.

46. Philips further explained that it "has received reports of possible patient impact due to foam degradation. The potential risks of particulate exposure include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects. The potential risks of chemical exposure due to off-gassing include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects."

47. On the same day, Philips also issued "Clinical information for physicians," which explained that the foam breakdown "may lead to patient harm and impact clinical care." Philips warned doctors that the following symptoms and health effects can result:

48. While there have been limited  reports of headache, upper airway irritation, cough, chest pressure, and sinus  infection that may have been associated  with the foam, based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of  potential patient impact, from transient potential  injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening or cause permanent  impairment, or require medical intervention to preclude permanent impairment.

Case ID: 211201983

49. Deterioration of the foam can release harmful chemicals into the air that the machines are pumping into patients' lungs, including toluene diamine, toluene diisocyanate, and diethylene glycol.

50. The National Institute for Occupational Safety and Health categorizes toluene diisocyanate as "potential carcinogen." The European Union considers toluene diisocyanate "highly toxic" and has concluded that toluene diamine "cannot be considered safe for use."

51. Philips disclosed that it "has received several complaints regarding the presence of black debris or particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)." The PE-PUR foam is black, and when it breaks down, it can release these particles into the airpath.

52. Harmful gasses can also be released as the foam degrades, including dimethyl diazine and Phenol, 2,6-bis (1,1-dimethylethyl)-4-(1-methylpropyl)-.

53. Philips admitted that these harmful substances can cause: "irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve" and may lead to the following symptoms: "headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects," as well as "adverse effects to other organs such as kidney and liver."

54. Philips advised patients to stop using affected CPAP and BiPAP machines immediately because of the potential health risks.

55. The statement also acknowledged that it may be too dangerous for patients using affected ventilators to stop using them and more or less advised doctors to decide

Case ID: 211201983

whether it was more dangerous to take the patient off the ventilator or to leave the patient on the defective ventilator.

56. At no point has Montgomery informed Plaintiff about the dangers of using the DreamStation CPAP even though Montgomery had a direct relationship with Plaintiff.

57. The products affected by the recall include:

    i.  E30
    ii.  DreamStation  ASV
    iii.  DreamStation  ST, AVAPS
    iv.  SystemOne ASV4
    v.  C Series ASV, S/T, AVAPs
    vi.  OmniLab Advanced Plus
    vii.  SystemOne (Q Series)
    viii.  DreamStation CPAP, Auto CPAP, BiPAP
    ix.  DreamStation Go CPAP, APAP
    x.  Dorma 400, 500 CPAP
    xi.  REMStar SE Auto CPAP
    xii.  Trilogy 100 and 200
    xiii.  Garbin Plus, Aeris, LifeVent
    xiv.  A-Series BiPAP Hybrid A30
    xv.  A-Series BiPAP V30 Auto
    xvi.  A-Series BiPAP A40
    xvii.  A-Series BiPAP A30

58. Philips acknowledged that most of the devices it was recalling are still within the "advised 5-year service life" of the products.

59. Philips has admitted that the recalled products are defective and unsafe and that patients should stop using them immediately. Although still within what was supposed to be their useful life, these products are now effectively useless.

60. Had Plaintiff known about the defect and health risks, he would not have bought the Philips DreamStation CPAP product.

Case ID: 211201983

61. Had Plaintiff been informed about the defect and health risks, he could have and would have stopped using the Philips DreamStation CPAP immediately.

**PHILIPS KNEW ABOUT THE DEFECT LONG BEFORE ISSUING THE RECALL**

62. Although Philips did not disclose these health risks to its consumers or the general public until mid-year 2021, Philips knew about these health risks much earlier.

63. As noted above, when Philips announced the recall, it acknowledged it had already received complaints about black particles in the airways of the machines. The DreamStation line first launched in 2015, and several of the affected models have been on the market even longer.

64. Online message boards, review sites, and social media contain many complaints regarding black particles and foam degradation problems. Philips, like most companies, likely monitors these online forums and would have learned about the problem years ago.

65. The following are just a sampling of the online complaints.

66. In 2019, the user "Skogcat1" reported on apneaboard.com in a thread entitled "Black sticky dust in CPAP machine"  that, when using the REMStar Auto, there were "sticky black dust particles" in the humidifier chamber.

67. In September 2020, Carol Nickerson posted on Facebook that she found a black mold-like substance in the water reservoir of her Philips DreamStation.

68. In June 2021, shortly after the recall was announced, on a Reddit thread entitled "Dreamstation Foam, user "BOSSHOG999" posted: "I was wondering what the hell those black particles were in my tube."

Case ID: 211201983

69. In addition to consumer complaints, Philip should have known about the foam problems from its prerelease testing. Medical devices go through considerable testing and design prior to release to the public.

70. As noted above, Philips's own marketing dating back to at least 2017, indicates it considered and studied the foam and noise reducing abilities extensively when designing the product.

71. Furthermore, Philips already claims to know that the second-generation DreamStation 2, which it launched just before the recall, is free from the foam degradation defect. This strongly suggests that Philips was aware of and looked at the issue when developing the DreamStation 2.

72. Despite knowing about the foam deterioration defect and related health hazards for years, Philips did nothing to warn consumers, healthcare providers, or the public until very recently.

73. Furthermore, although it has issued a "recall" of the affected products, Philips is not actually repairing or replacing those products. Philips has indicated it may take over a year before it can start repairing or replacing consumers' devices. Instead, Philips is using this as an opportunity to encourage consumers to buy its second-generation products (at full price).

74. Unfortunately for patients who need to use these devices every night to stave off serious health problems, waiting over a year for Philips to offer some sort of repair is not a realistic option.

75. On July 22, 2021, the U.S. Food and Drug Administration ("FDA") upgraded the recall to a Class 1, the most serious type of recall.

Case ID: 211201983

76. It was only on December 2, 2021 that Plaintiff received a notice of recall regarding the Philips device, in the form of an SMS text message from the healthcare facility that treats Plaintiff for sleep apnea. See Exhibit __.

**EQUITABLE TOLLING OF STATUTES OF LIMITATIONS**

77. The running of any statute of limitations, if even applicable, has been equitably tolled by reason of Defendants' fraudulent concealment and omissions of critical safety information. Through its affirmative misrepresentations and omissions, Philips actively concealed from Plaintiff the true risks associated with the recalled product.

78. As a result of Defendants' actions, Plaintiff was unaware, and could not have reasonably known or learned through reasonable diligence, that he had been exposed to the risks and harms set forth herein and that those risks and harms were the direct and proximate result of Defendants' acts and omissions

**PLAINTIFF'S INJURIES**

79. Mr. Traversa at all times relevant hereto used his Philips DreamStation CPAP as instructed, including performing recommended cleaning and maintenance.

80. Mr. Traversa did not alter or modify the Philips DreamStation CPAP device, and used it in the condition intended by the Defendants.

81. Mr. Traversa, as a long-time sleep apnea patient first used a CPAP device in approximately 2003.

82. Almost immediately, Mr. Traversa's quality of sleep improved; he found himself more refreshed upon waking, more alert during the day, and less irritable.

83. Mr. Traversa experienced no respiratory complications during this period.

Case ID: 211201983

84. Mr. Traversa purchased the Philips DreamStation from Defendant CMMC on or about November 23, 2015.

85. In Fall of 2019, Plaintiff developed a persistent cough; shortness of breath; and throat and chest irritation.

86. The quality of Mr. Traversa's sleep did not diminish, even while his breathing was labored and difficult during the day; consequently, Mr. Traversa had no reason to suspect that his Philips CPAP device was defective.

87. Mr. Traversa began to see a series of doctors, hoping to identify the source of his coughing and hacking.

88. For a significant period, Mr. Traversa suffered through what he and his physicians believed to be a mystery illness, even as the coughing worsened.

89. In fact, one coughing fit was so severe that Mr. Traversa suffered a broken rib on his right side.

90. Later coughing fits resulted in additional broken ribs on his right side.

91. In Spring of 2021, while sleeping, Mr. Traversa was awakened by a coughing fit so severe that he took off the CPAP headgear (mask) and got out of bed.

92. On getting out of bed Mr. Traversa passed out and fell striking his head on a wastebasket. When he regained consciousness he climbed back into bed, later calling his health insurer's nursing assistance line.

93. The provider who answered Mr. Traversa's call asked about Mr. Traversa's symptoms, which were: loss of consciousness; shortness of breath; elevated blood pressure, and profuse sweating.

Case ID: 211201983

94. The provider recommended Mr. Traversa go the closest hospital  emergency department post haste.

95. The combination of broken ribs and constant coughing caused pleural effusion resulted in two trips to the emergency department of Thomas Jefferson University Hospital, ultimately resulting in hospital admission each time for three days on each occasion.

96. Treatment of the pleural effusion consisted of a thoracotomy which is an invasive procedure in which a needle and catheter were inserted between Mr. Traversa's pleura and lung to drain fluid.

97. Mr. Traversa had that procedure performed three times. Twice, once each after admission to the hospital, and once as an outpatient procedure. In each of the two procedures performed while a patient in the hospital approximately two liters of serosanguineous fluid were drained from pleura surrounding his right lung on each occasion. An additional liter-plus of serosanguineous fluid was drained during the outpatient procedure.

98. The pleural effusion resulted in squeezing of Mr. Traversa's lung and thereby resulted in a diminution of available lung capacity.

99. While the thoracotomies drained the fluid, allowing the lung space to reinflate, as of the date of this complaint, Mr. Traversa's lung capacity is still diminished.

100.      In April, 2021, shortly after Philips announced the voluntary recall, Mr. Traversa discontinued use of the Philips DreamStation and obtained a different CPAP device.

Case ID: 211201983

101.    Almost immediately, Mr. Traversa's breathing improved; and within

several weeks of discontinuing use of Philips' defective device, Mr. Traversa's

persistent cough stopped altogether.

102.    As of the date of this pleading, Mr. Traversa has not experienced an

aggressive coughing fit since August 2021.

103.    These injuries caused substantial pain and suffering.

### COUNT I– DESIGN DEFECT STRICT LIABILITY

104.    The averments contained in Paragraphs 1 through 103 are reiterated and

incorporated by reference, as if more fully set forth at length.

105.    Philips designed, manufactured, and/or marketed the DreamStation CPAP

device at issue in this complaint.

106.    CMMC sold the device to the Plaintiff.

107.    The Philips DreamStation CPAP device was in a defective condition as a

result of the use of PE-PUR foam, and was unreasonably dangerous to the consumer.

108.    All Defendants are in the business of selling CPAP devices.

109.    The dangers of PE-PUR in CPAP devices foam are generally unknowable

and unacceptable to ordinary CPAP users; Mr. Traversa could not reasonably

anticipate and appreciate the dangerous condition of the product and the attendant risk

of injury from the PE-PUR foam material used in the Philips DreamStation device.

110.    Furthermore, the risk of harm from the defective CPAP device outweighs

the burden of precautions, if any, a consumer may take.

Case ID: 211201983

111.    The use of PE-PUR foam in the Philips DreamStation device directly caused the months of coughing and labored breathing that Mr. Traversa suffered, including the broken ribs that resulted from aggressive coughing fits.

WHEREFORE, Plaintiff Roger Traversa hereby respectfully prays this honorable Court to enter judgment in his favor and against all Defendants; to award compensatory damages in an amount exceeding $50,000; to award punitive damages; and for any other relief the Court may direct.

## COUNT II– NEGLIGENT DESIGN AS TO PHILIPS DEFENDANTS

112.    The averments contained in Paragraphs 1 through 111 are reiterated and incorporated by reference, as if more fully set forth at length.

113.    Philips designed, manufactured, and/or marketed the DreamStation CPAP device at issue in this complaint.

114.    Defendant Philips had a duty to design a CPAP machine that operated safely.

115.    The use of PE-PUR foam that degraded and flowed directly into Mr. Traversa's airway breached that duty.

116.    The negligently designed CPAP machine directly caused Mr. Traversa's injuries.

WHEREFORE, Plaintiff Roger Traversa hereby respectfully prays this honorable Court to enter judgment in his favor and against Defendant Philips; to award compensatory damages in an amount exceeding $50,000; to award punitive damages; and for any other relief the Court may direct.

## COUNT III– PERSONAL INJURY

Case ID: 211201983

117.      The averments contained in Paragraphs 1 through 116 are reiterated and incorporated by reference, as if more fully set forth at length.

118.      Defendant Philips, as the designer and manufacturer of the DreamStation 2 CPAP device at issues had a duty to ensure that the device was safe for its intended use.

119.      Defendant Montgomery, as the seller of the DreamStation 2 device at issue, had a duty to ensure that the device was safe for its intended use.

120.      All Defendants breached their respective duties by:

   i.   Designing the device to use hazardous PE-PUR foam that degraded and flowed directly into Mr. Traversa's airway;

   ii.  Manufacturing the device using hazardous PE-PUR foam that degraded and flowed directly into Mr. Traversa's airway;

   iii. Selling the device containing the hazardous PE-PUR foam that degraded and flowed directly into Mr. Traversa's airway.

121.      The negligently designed CPAP machine directly caused Mr. Traversa's injuries, including broken ribs, multiple pleural effusions, diminished lung capacity, and/or other injuries.

122.      As a result of the above injuries, Mr. Traversa suffered damages in the form of lost income; hospital bills; lost quality of life; pain and suffering; emotional distress; and other damages of both an economic and non-economic nature.

WHEREFORE, Plaintiff Roger Traversa hereby respectfully prays this honorable Court to enter judgment in his favor and against all Defendants; to award compensatory

Case ID: 211201983

damages in an amount exceeding $50,000; to award punitive damages; and for any other relief the Court may direct.

## COUNT IV– BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AS TO MONTGOMERY DEFENDANTS

123.     The averments contained in Paragraphs 1 through 122 are reiterated and incorporated by reference, as if more fully set forth at length.

124.     On or about November 23, 2015, Plaintiff purchased a DreamStation CPAP machine from Defendant Montgomery.

125.     Plaintiff, Mr. Traversa, purchased the DreamStation for a particular purpose; namely for use in the treatment of sleep apnea.

126.     Plaintiff (a) informed Defendant Montgomery of the particular purpose for which he purchased the device, and/or (b) believes Defendant knew of the particular purpose of the device as ascertained by the prescribing physician's instructions.

127.     Plaintiff relied on Defendant Montgomery's skill and/or judgment in selecting and/or furnishing suitable goods; and Defendant Montgomery knew or had reason to know Plaintiff was so relying.

128.     The DreamStation was not fit for its intended purpose due to the defectively designed inclusion of PE-PUR foam which degraded into Mr. Traversa's airway.

129.     Defendant Montgomery had actual, constructive, and equitable notice of the breach due to Philips' recall of the DreamStation.

Case ID: 211201983

130.     As a result of the breach, Mr. Traversa economic injuries in the form of the total loss of the CPAP device at issue; as well as incidental and consequential damages in the form of out of pocket expenditures to obtain another CPAP device; lost income due to hospitalizations; pain and suffering; and other forms of compensable injury.

WHEREFORE, Plaintiff Roger Traversa hereby respectfully prays this honorable Court to enter judgment in his favor and against Defendant Montgomery; to award compensatory damages in an amount exceeding $50,000; to award punitive damages; and for any other relief the Court may direct.

*Charles Thomas, Jr.*

**CHARLES THOMAS, JR.**

BY: /s/     *Charles Thomas, Jr.*
Attorney for Plaintiff

Case ID: 211201983

## **VERIFICATION**

I hereby verify that averments contained in the COMPLAINT are true and correct to the best of my knowledge, information, and belief. I further verify that the averments contained therein are made subject to the penalties set for in 18 Pa.C.S. 4901, relating to unsworn falsification to authorities.

Respectfully submitted,

ROGER TRAVERSA

12/19/21

DATED

Case ID: 211201983

Exhibit A

 er | United States

Jun 14, 2021

# Philips issues recall notification* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices

- *Philips is initiating a voluntary recall notification* to ensure patient safety in consultation with regulatory agencies*
- *Corrective actions include the deployment of updated instructions for use and a repair and replacement program for affected devices*
- *Philips aims to address all affected devices within the scope of this correction as expeditiously as possible*

Case ID: 211201983

**Amsterdam, the Netherlands** – Following the company update on April 26, 2021, Royal Philips (NYSE: PHG; AEX: PHIA) today provides an update on the recall notification* for specific Philips Bi-Level Positive Airway Pressure (Bi-Level PAP), Continuous Positive Airway Pressure (CPAP), and mechanical ventilator devices to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices. The majority of the affected devices within the advised 5-year service life are in the first-generation DreamStation product family.

To date, Philips has produced millions of Bi-Level PAP, CPAP and mechanical ventilator devices using the PE-PUR sound abatement foam. Despite a low complaint rate (0.03% in 2020), Philips determined based on testing that there are possible risks to users related to this type of foam. The risks include that the PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals. The foam degradation may be exacerbated by use of unapproved cleaning methods, such as ozone,** and high heat and high humidity environments may also contribute to foam degradation.

Therefore, Philips has decided to voluntarily issue a recall notification* to inform patients and customers of potential impacts on patient health and clinical use related to this issue, as well as instructions on actions to be taken.

"We deeply regret any concern and inconvenience that patients using the affected devices will experience because of the proactive measures we are announcing today to ensure patient safety," said Frans van Houten, CEO of Royal Philips. "In consultation with the relevant regulatory agencies and in close collaboration with our customers and partners, we are working hard towards a resolution, which includes the deployment of the updated instructions for use and a comprehensive repair and replacement program for the affected devices. Patient safety is at the heart of everything we do at Philips."

Case ID: 211201983

12/27/21, 1:56 PM

Case 2:21-cv-05674-JHS   Document 1-1   Filed 12/30/21   Page 30 of 33

Philips issues recall notification to mitigate potential health risks related t...

## Recall notification* advise for patients and customers

*Based on the latest analysis of potential health risks and out of an abundance of caution, the recall notification* advises patients and customers to take the following actions:*

- **For patients using <u>affected</u> BiLevel PAP and CPAP devices:** *Discontinue use of your device and work with your physician or Durable Medical Equipment (DME) provider to determine the most appropriate options for continued treatment. To continue use of your device due to lack of alternatives, consult with your physician to determine if the benefit of continuing therapy with your device outweighs the risks identified in the recall notification.**

- **For patients using <u>affected</u> life-sustaining mechanical ventilator devices:** *Do not stop or alter your prescribed therapy until you have talked to your physician. Philips recognizes that alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy, or in cases where therapy disruption is unacceptable. In these situations, and at the discretion of the treating clinical team, the benefit of continued usage of these ventilator devices may outweigh the risks identified in the recall notification.**

## Possible health risks

The company continues to monitor reports of potential safety issues as required by medical device regulations and laws in the markets in which it operates. To date, there have been no reports of death as a result of these issues. Philips has received reports of possible patient impact due to foam degradation. The potential risks of particulate exposure include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects. The potential risks of chemical exposure due to off-gassing include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects. Philips has received no reports regarding patient impact related to chemical emissions.

## Repair and replacement program

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.

Case ID: 211201983

## Financials

In terms of the financial impact, Philips anticipates that the expected revenue headwinds in the Sleep & Respiratory Care business in 2021 will be compensated by the strength of the company's other businesses. Therefore, the full year comparable sales growth and Adjusted EBITA margin guidance provided on April 26, 2021 remains unchanged.

The updated instructions for use of the affected devices have resulted in adjustments to and acceleration of the repair and replacement program, as well as intensified communication with customers and patients. This had led to an increase of EUR 250 million in the expected costs of the corrective actions on the installed base, in addition to the provision that the company recorded in the first quarter of 2021.

## Additional information

For more information on the recall notification,* as well as instructions for customers, users and physicians, affected parties may contact their local Philips representative or visit www.philips.com/SRC-update.

*   *This is a recall notification for the US only, and a field safety notice for the rest of the world*

**   *Potential Risks Associated With The Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories: FDA Safety Communication.*

## About Royal Philips

Click here to read more ⌄

## Forward-looking statements

Click here to read more ⌄

## Topics

| Sleep & Respiratory care | Financial performance | Press release |

## For additional information:

Please visit www.philips.com/src-update

## Share on social media

## Related news

Case ID: 211201983



**10, 2021**

**Philips unveils COVID-19's impact on sleep with 2021 Survey Results ›**

Press release

January 11, 2021

**Philips highlights central role of healthcare in the home at All-Digital CES 2021 ›**

Press release

December 08, 2020

**Philips new DreamWear Silicone Pillows designed u 3D facial scan data to fit di populations ›**

Press release

© Koninklijke Philips N.V., 2004 - 2021. All rights reserved.

Case ID: 211201983

2:52

◀ Phone



+1 (215) 309-9424 ›

Hello, this is Penn Medicine. This is in regards to a recent device recall that may affect you. For more information, access our website: https://w2h.us/cpap_recall

You can reply STOP at any time to stop receiving these messages. Message & data rates may apply.

Please text 1 or 2.

1) I am aware of this recall, have registered my device and don't have questions.
2) I don't have a CPAP device, I have a different brand, or this message doesn't pertain to me.

1

 

Text Message 

      

Case ID: 211201983